The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
The Full Commission adopts the findings of fact found by the Deputy Commission as follows:
FINDINGS OF FACT
1. Plaintiff is a 37 year old male, who for the last fifteen years has been employed by defendant, U.S. Air, Inc. and its predecessor in interest, Piedmont Airlines.
2. At the time in question he was a ramp service supervisor not only responsible for supervising the ramp agents assigned to him in loading and unloading planes to insure they left on schedule, but was a working supervisor that assisted his ramp agents in loading and unloading planes requiring him in the course of doing so to work on his knees in kneeling or squatting positions inside the confined baggage bins of the same planes fifteen to twenty minutes at a time for a total of fifty to ninety minutes each shift.
3. The involved occupational disease claim is one for a disabling complex torn medial meniscus requiring corrective surgery that plaintiff sustained in his right knee allegedly due to the manner that he was required to work on his knees in the confined aircraft baggage bins in the course of his regular ramp service supervisor's job where he was responsible for insuring that the same aircraft were timely loaded and unloaded.
4. Unlike most, or 85 percent, of the other jobs in the work force that did not require kneeling, plaintiff's job as a ramp service supervisor was among the 10 percent of those jobs that did require kneeling on an occasional basis.
5. Without identifiable incident or injury in the summer of 1994 plaintiff began to experience problems with his right knee because of the disabling torn medial meniscus giving rise hereto ultimately requiring him to undergo corrective knee surgery and manifested by the knee becoming painful and swollen as well as episodes of the knee locking up when the torn meniscus flipped into the knee joint until he could manipulate his knee unlocking it. Because of the same symptoms on July 21, 1995 plaintiff prepared a preliminary report of occupational injury for defendant-employer indicating that he was having right knee problems, but despite continued episodes of his knee becoming painful, swollen and locking up was able to continue regularly working for defendant-employer until a more severe episode on September 27, 1995 when his knee locked up after he had been on his knees in the confined baggage bin of an aircraft unloading freight and he was unable to straighten his knee.
6. On the same day plaintiff sought medical treatment from the so-called company physician Dr. Daniel J. Bernstein and was thereby referred to an orthopedic surgeon, Dr. Stephen Sims of Charlotte's Miller Orthopedic Clinic, who ultimately performed corrective surgery for the complex torn medial meniscus responsible for his disabling knee symptoms.
7. Plaintiff has since reached maximum medical improvement and/or the end of the healing period from and following his disabling complex meniscus tear requiring corrective surgery enabling him to return to work for defendant-employer earning the same wage, but as a result of his knee injury does retain a 15 percent permanent partial disability of the right lower extremity.
8. While there can be degenerative meniscus tears; those are marked by fraying of the outside of the cartilage rather than the type of tear in the substance of the cartilage that plaintiff had sustained resulting in the complex bucket handle tear giving rise hereto. Typically this type of meniscus tear is the result of acute trauma associated with some sort of sporting or twisting injury such as when someone jumps or lands on their knee and has a twisting injury. This type of meniscus tear is usually a high energy sort of injury manifested by immediate pain, swelling and difficulty walking and one that stands out in the mind of the one injured. Once the meniscus tear occurs it tends to remain symptomatic manifested by episodes of the knee becoming painful and swollen as well as locking up ultimately requiring corrective knee surgery. Although the kneeling or squatting that plaintiff was required to do as a ramp supervisor did result in him being at a risk of developing certain other knee conditions that he does not suffer from and are more fully described in Dr. Sims deposition testimony; it did not result in him being at an increased risk of sustaining the type of complex bucket handle medial meniscus tear giving rise hereto and at most resulted in a little more chronic wear and tear on the knee than someone sitting in the office or someone just normally standing and walking around; however, the same kneeling or squatting was the type of activity capable of causing the already torn meniscus to flop back into the knee joint resulting in the knee locking up and essentially involved a movement of knee similar to the one used by physicians in checking the knee to determine whether an individual had suffered a cartilage injury.
9. Although in the event of continuing or repetitive episodes of the knee locking up over years and years as opposed to the several months involved in this case an individual could develop significant roughening of the articular knee joint surface and associated arthritis requiring corrective surgery; plaintiff only developed very minor or mild articular changes due to the several months that his knee had been popping out of joint that neither required surgery nor contributed to his resulting permanent partial disability, which was instead due to the complex medial meniscus tear sustained alone.
10. Although the involved complex medial meniscus tear occurred in the summer of 1994 when he began to experience pain and swelling in the affected knee as well as episodes of the knee locking up and the most likely cause of the same condition is one of the types of traumatic injuries described in the above findings of fact typically responsible therefor; there is no competent credible or medial evidence that plaintiff's job as a ramp service supervisor caused or significantly contributed to his complex medial meniscus tear; but rather, the tear and its characteristic episodes began without identifiable incident or injury.
11. There is further no competent credible medical or other evidence that plaintiff's job placed him at an increased risk of sustaining this particular type of complex medial meniscus tear as compared to members of the general public and other employments at large; but rather, at most was subject to being aggravated by the same job because of the added stress on the already injured knee joint and the fact that the squatting required was one of the mechanisms capable of causing the existing meniscus tear to flop into the knee joint locking it up. There is no evidence; however, that plaintiff's employment materially aggravated and/or accelerated his existing meniscus tear thereby either requiring him to undergo corrective knee surgery or resulted in his disabling knee condition. At most plaintiff's job symptomatically, but temporarily, aggravating an existing knee injury, whose natural course was for him to continue to experience episodes of pain, swelling and locking up regardless of his job until the torn meniscus was repaired.
12. Although had he continued working as a ramp service supervisor for years and years after sustaining his torn medial meniscus in the summer of 1994 without identifiable incident or injury without seeking medical treatment as opposed to the several months actually involved he was subject to developing significant arthritis of the articular joint service of the knee from the knee continually locking up and was capable of contributing to the need for knee surgery in addition to the existing medial meniscus tear; only several months elapsed between the summer of 1994 when plaintiff initially sustained his meniscus tear and his subsequent medical treatment and had only developed very mild or minor joint changes in that several month period that his knee had been locking up before he sought medical treatment and there is no competent credible medial evidence that the mild or minor changes contributed to his ultimate need of surgery in this particular case as opposed to ones involving years and years of the knee continuing to lock up; but rather, the need for surgery in this case and plaintiff's ultimate permanent disability were due to the torn medial meniscus he sustained without identifiable incident or injury in the summer of 1994 independent of any contribution by his employment as a ramp service supervisor.
* * * * * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
For the reasons stated in the above findings of fact plaintiff has not proven that the disabling complex medial meniscus tear of his right knee requiring surgery was due to causes and conditions that are characteristic of and peculiar to his particular trade, employment or occupation as a ramp service supervisor requiring him to work on his knees on an occasional basis, but excluding all ordinary diseases of life to which the public is equally exposed outside of that work. N.C. Gen. Stat. § 97-53(13).
* * * * * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff claim must be and is hereby DENIED.
2. Each side shall bear its own cost.
 S/ _______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ COY M. VANCE COMMISSIONER
BSB/cnp/rst 3/10/97